# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **K.W. and S.W.**

**No. 18-0491** (Monongalia County 17-JA-51 and 17-JA-52)

**FILED**

**November 19, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother S.B., by counsel Natalie S. Sal, appeals the Circuit Court of Monongalia County's April 23, 2018, order terminating her parental rights to K.W. and S.W.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Teresa J. Lyons, filed a response on behalf of the children also in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first granting her a post-adjudicatory improvement period or additional services tailored to her circumstances.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner has a significant history of Child Protective Services ("CPS") involvement. In May of 2005, petitioner's parental rights to her first child, D.B., were terminated following companion criminal charges and a resulting guilty plea for causing severe immersion burns to the child by holding him in hot water. Petitioner served five years in prison related to that incident.

In February of 2010, petitioner gave birth to K.W. and the DHHR filed a child abuse and neglect petition based upon the aggravated circumstances of her prior termination of parental rights, as well as a lack of stable shelter. Petitioner was adjudicated as an abusing parent and was offered services at that time. K.W. was returned to petitioner's custody in March of 2011 and the case was dismissed. Petitioner gave birth to S.W. just prior to the case's dismissal.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

In April of 2014, the DHHR received a referral that petitioner was asked to leave a homeless shelter after she was observed smacking and yanking the arms of her children. After being asked to leave, petitioner began "throwing the children" around the room. As a result, a third case was initiated and petitioner was granted services, including parenting and adult life skills classes. Petitioner regained custody of the children in June of 2015, but the DHHR continued to provide services until April of 2016, at which point the case was closed.

The DHHR received a referral in January of 2017, which alleged that petitioner's boyfriend, D.P., hit her in the presence of the children. The DHHR investigated the matter and interviewed the children, who reported that the boyfriend hit petitioner and was in jail. The DHHR then interviewed petitioner, who stated that she did not intend to resume her relationship with her boyfriend and entered into a safety plan in which she agreed to keep him away from the children and participate in parenting and adult life skills classes. Despite these services, petitioner allowed the boyfriend back into the home and K.W. subsequently reported to his teacher that the boyfriend struck him in the head. As a result, the children were removed from the home. In May of 2017, due to the domestic violence and her failure to comply with the safety plan, the DHHR filed the instant child abuse and neglect petition against petitioner.

In July of 2017, the circuit court held an adjudicatory hearing in which petitioner stipulated to the allegations contained in the petition. The circuit court accepted petitioner's stipulation, adjudicated her as an abusing parent, and scheduled the dispositional hearing. However, in August of 2017, the children disclosed sexual abuse and stated that cameras were set up in petitioner's home to record the abuse. Following these disclosures, the children were interviewed at the local Child Advocacy Center ("CAC") where they reported abuse by the boyfriend and J.T., another man living in petitioner's home. K.W. reported that he told petitioner of the abuse, but she did "nothing" except tell J.T. to stop, and actually participated in videotaping the abuse. Therapy services were put in place for the children and they continued to make similar disclosures over the course of several months.

The DHHR filed an amended petition in November of 2017, alleging that the children were sexually abused by the individuals living in the home with petitioner's knowledge. Thereafter, the circuit court held an adjudicatory hearing on the amended petition in January of 2018. Both the director of the CAC and the children's therapists testified regarding the disclosures of sexual abuse and resulting treatment. Petitioner testified that she exposed her children to inappropriate men but denied having knowledge that they were sexually abused. After hearing evidence, the circuit court again adjudicated petitioner as an abusing parent, finding that the children were sexually abused in her home and that she knew, or should have known, of the abuse. Petitioner filed a motion requesting a post-adjudicatory improvement period in March of 2018.

The circuit court held the dispositional hearing over the course of four days throughout March of 2018 and April of 2018. The DHHR presented the testimony of several witnesses, including a caseworker who testified as to petitioner's significant CPS history. The caseworker stated that both children received inpatient psychiatric treatment due to the abuse perpetrated against them. Throughout three abuse and neglect cases, then eight-year-old K.W. and seven-year-old S.W. were in the custody of the DHHR for a total of thirty-seven months and twenty-

four months, respectively. The caseworker testified that petitioner first received services to address her actions in 2005 and services were again provided to her in 2010, from 2014 through 2016, and from 2017 to the date of the dispositional hearing. Such services included parenting and adult life skills classes, transportation services, and supervised visitation. Most recently, petitioner's service providers were instructed to include specific instruction regarding appropriate persons for the children to be around and domestic violence counseling. The caseworker concluded that there were no other services available that would help petitioner remedy the chronic conditions of abuse and neglect.

The DHHR also presented the testimony of the psychologist who performed a psychological evaluation of petitioner. The psychologist testified that petitioner denied physical abuse of K.W. by her boyfriend and further denied domestic violence in her relationships. During the evaluation, petitioner did not mention the allegations of sexual abuse and denied abusing D.B., despite the termination of her parental rights to that child in 2005 and her related incarceration. The psychologist testified that petitioner blamed others for her situation and insisted that she did not need services. Specifically, petitioner did not believe that individual therapy was helpful because it focused on her own childhood abuse. As a result, petitioner's prognosis for parental improvement was poor given her inability to recognize the impact of her decisions on the children.

Petitioner testified in support of her motion for a post-adjudicatory improvement period. Petitioner requested additional therapy aimed at addressing her childhood abuse, but acknowledged that she had intermittently sought therapy since 2010. Petitioner minimized the abuse perpetrated against the children. When asked whether she believed her children were raped, petitioner responded "I have no reason not to. But as I recall, they were not raped, they was [sic] just molested. That's a totally significant difference there." Further, regarding their claims of abuse, she stated "I don't believe my children entirely, no." Petitioner continued to deny participating in or having knowledge of the sexual abuse of her children.

After hearing evidence, the circuit court found that petitioner failed to remediate the conditions of abuse which led to the filing of the petition and did not demonstrate that she would be able to remedy the conditions of abuse in the near future. Accordingly, the circuit court denied petitioner's request for a post-adjudicatory improvement period and found that termination of her parental rights was in the children's best interests. It is from the April 23, 2018, dispositional order that petitioner appeals.[2]

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the

---

[2]The father's parental rights were previously involuntarily terminated in 2015. K.W. is placed in a foster home and the permanency plan for the child is adoption therein. S.W. is placed at a residential facility and is undergoing treatment for behaviors arising from the abuse. The permanency plan for the child is adoption pending her release.

facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first granting her an improvement period and services narrowly tailored to her circumstances. Petitioner alleges that she complied with the services she was offered and testimony established that she made progress throughout the proceedings. Petitioner argues that, based on her compliance, there was no indication that she would not continue to participate in an improvement period. She further avers that, while she was provided services, she was not provided intensive individual therapy or domestic violence counseling that was narrowly tailored to address her situation. According to petitioner, the circuit court should not have terminated her parental rights when less-restrictive alternatives, such as an improvement period or additional services, were available. We disagree.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) ("[i]t is within the court's discretion to grant an improvement period within the applicable statutory requirements."). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the respondent to demonstrate 'by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period. . . .'" *In re Charity H.*, 215 W.Va. 208, 215, 599 S.E.2d 631, 638 (2004). Further, pursuant to West Virginia Code § 49-4-604(b)(7)(C), the DHHR is not required to make reasonable efforts to preserve the family if the circuit court determines that "[t]he parental rights of the parent to another child have been terminated involuntarily[.]"

Here, petitioner failed to demonstrate that she was likely to fully participate in an improvement period. While petitioner was not granted a formal improvement period, she was granted services throughout the entire proceeding. Specifically, petitioner's CPS involvement began years ago when her parental rights to an older child were involuntarily terminated in 2005. Thereafter, petitioner gave birth to K.W. and S.W. and continued to act in an abusive manner, resulting in subsequent petitions and services provided in 2010, from 2014 through 2016, and throughout the underlying proceedings. During the dispositional hearing, a caseworker testified that petitioner received parenting and adult life skills classes, a psychological evaluation,

transportation services, and supervised visitation, and opined that there were no other services available to assist her. Despite receiving these services over the course of several years, petitioner failed to address or acknowledge the conditions of abuse and neglect and minimized the abuse, testifying that there was a "totally significant difference" between whether her children were raped or molested. She further stated that she did not entirely believe her children's disclosures and continued to deny knowledge of or involvement in the sexual abuse, demonstrating no insight into how her children were affected by her actions. We have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re Charity H.*, 215 W.Va. at 217, 599 S.E.2d at 640 (2004)). The record demonstrates that petitioner failed to acknowledge the conditions of abuse and/or neglect and how her behavior negatively affected the children, thus rendering an improvement period futile.

While petitioner argues that she should have been granted services specifically tailored to address her circumstances, she cites no authority to support her argument. Further, petitioner's argument is disingenuous in light of the services she was provided, including access to individual therapy and domestic violence counseling. The psychologist testified during the dispositional hearing that petitioner attended individual counseling but did not find it helpful. Petitioner also testified that she participated in counseling services intermittently since 2010. Further, petitioner received services from the Rape and Domestic Violence Information Center ("RDVIC"), including counseling and education regarding the dynamics of domestic violence, the control wheel, and the cycle of violence. Accordingly, the record is clear that petitioner participated in both individual counseling and domestic violence education.

In sum, petitioner failed to demonstrate that she was likely to participate in an improvement period. She was offered several services, both throughout the underlying proceedings and in prior cases, but failed to address or acknowledge the conditions of abuse. Moreover, due to the existence of aggravated circumstances based on petitioner's prior termination of her parental rights, the DHHR was not required to make reasonable efforts to preserve the family. Accordingly, we find no error in the circuit court's decision to deny petitioner an improvement period or additional services beyond those she received.

We also find no error in the circuit court's decision to terminate petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. According to West Virginia Code § 49-4-604(c)(3), a situation in which there

is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child[.]

Here, petitioner failed to acknowledge the conditions of abuse and, thus, was unable to successfully follow through with services designed to reduce or prevent the abuse and neglect of her children. The record demonstrates that petitioner received services over the course of several years, yet returned to her abusive behavior. At the dispositional hearing, the caseworker testified that no additional services were available to assist petitioner in correcting the conditions of abuse. The psychologist reported that petitioner did not take responsibility for her actions and felt that services were not necessary. Given petitioner's lack of insight into her behavior, the psychologist opined that she is unlikely to change her parenting in the future and her prognosis for attaining minimally adequate parenting was poor.

Moreover, this Court has previously held that "courts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened. . . ." *Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4, in part (quoting Syl. Pt. 1, in part, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980)). Here, petitioner's parental rights to another child had been involuntarily terminated in prior abuse and neglect proceedings. Petitioner received services through the DHHR in 2010, from 2014 through 2016, and throughout the proceedings below, causing K.W. and S.W. to remain in foster care for thirty-seven and twenty-four months, respectively. Despite knowing that her parental rights were at stake, petitioner failed to satisfactorily address the conditions of abuse and continued to deny knowledge of the sexual abuse throughout the underlying proceedings. While petitioner argues that an improvement period tailored to her demands was warranted before termination of her parental rights, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W.Va. Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W.Va. Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Based on the evidence, we conclude that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. Circuit courts may terminate parental rights upon such findings.

Finally, because S.W. is currently placed in a residential facility while undergoing treatment, this Court reminds the circuit court of its continuing duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its continuing duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under W.Va. Code § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, we note that "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 23, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**: November 19, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment